Mack Lewis DREW, Appellant,

v.

STATE of Missouri, Respondent.

No. 54002.

Supreme Court of Missouri,
Division No. 2.

Feb. 10, 1969.

Dean S. Johnston, Joplin, for movant-appellant.

John C. Danforth, Atty. Gen., Jefferson City, Frank E. Vigus, Special Asst. Atty. Gen., St. Louis, for respondent.

DONNELLY, Judge.

An information filed in the Circuit Court of Jasper County, Missouri, charged defendant, Mack Lewis Drew, with murder in the first degree. On November 4, 1965, the prosecuting attorney amended the information to charge murder in the second degree, and defendant appeared with his employed attorney, Vernie Crandall, entered a plea of guilty to the charge, and was sentenced to imprisonment for twelve years.

On December 8, 1967, defendant filed in the Circuit Court of Jasper County, Missouri, his Motion to Vacate Judgment under S.Ct. Rule 27.26, V.A.M.R. An evidentiary hearing was held, with defendant present, on June 18, 1968. The Motion to Vacate Judgment was denied. Defendant appealed.

Defendant first alleges in his Motion that "he was denied due process and the equal protection of law for the reason he did not voluntarily enter a plea of guilty," and that, under the circumstances, the trial court "had to take for granted" his plea of guilty was voluntarily made.

The rules of law, applicable to these contentions, are now well-established:

(1) S.Ct. Rule 25.04, V.A.M.R., provides that the trial court " * * * shall not accept [a plea of guilty] without first determining that the plea is made voluntarily with understanding of the nature of the charge. * * *"

■ (2) The trial court must make this determination at the time the plea is taken. State v. Smith, Mo.Sup., 421 S.W.2d 501, 504. The trial court is not relieved of this duty where defendant is represented by counsel of his choice. State v. Arnold, Mo.Sup., 419 S.W.2d 59, 62.

■ (3) A plea of guilty is not "made voluntarily" if the defendant is misled or is "induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded * * *." State v. Cochran, 332 Mo. 742, 745, 60 S.W.2d 1, 2; State v. Parker, Mo.Sup., 413 S.W.2d 489, 494.

(4) S.Ct. Rule 27.25, V.A.M.R., provides that "a motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

■ (5) A defendant is not entitled as a matter of right to withdraw his plea of guilty after sentence. A plea of guilty may be withdrawn only "to correct manifest injustice." State v. Parker, Mo.Sup., 413 S.W.2d 489, 494.

■ (6) S.Ct. Rule 27.26, V.A.M.R., as amended and effective September 1, 1967, provides that a prisoner in custody under sentence may file a motion to vacate the sentence on the ground that the plea of guilty which preceded the sentence was not voluntarily made. An application, made after sentence, to withdraw a plea of guilty, is an attack on the validity of that sentence and will be treated as a proceeding to vacate under Rule 27.26. State v. Arnold, Mo. Sup., 419 S.W.2d 59, 60; State v. Mountjoy, Mo.Sup., 420 S.W.2d 316, 323. It should be submitted on a form substantially in compliance with the form appended to Rule 27.26.

■ (7) The transcript of the proceedings in the trial court at the time the plea of guilty is accepted should demonstrate a substantial compliance with the requirements of Rule 25.04. It can, and should, represent the best evidence available to show that a defendant's plea of guilty was made voluntarily with understanding of the nature of the charge.

■ (8) A defendant may, after sentence, file a motion to vacate sentence under Rule 27.26, and, if the transcript of the original proceedings *does not* demonstrate a substantial compliance with the requirements of Rule 25.04, shall be given an evidentiary hearing if issues of fact are raised in the motion. Rule 27.26(e). "If it be found on the hearing on the motion to vacate the sentence, notwithstanding the insufficiency of the record at the time the plea was accepted, that the plea of guilty was in fact voluntary and was made with an understanding of the nature of the charge, then no manifest injustice could have resulted." State *v.* Sayre, Mo.Sup., 420 S.W. 2d 303, 305.

■ (9) A defendant may, after sentence, file a motion to vacate sentence under Rule 27.26, and, even though the transcript of the original proceedings *does* demonstrate a substantial compliance with the requirements of Rule 25.04, shall be given an evidentiary hearing if issues of fact are raised in the motion. Rule 27.-26(e); State v. Garner, Mo.Sup., 412 S.W.2d·155. In this situation, if it be found on all the evidence "that the plea of guilty was in fact voluntary and was made with an understanding of the nature of the charge, then no manifest injustice could have resulted."

■ (10) In either situation, the defendant "has the burden of establishing his grounds for relief by a preponderance of the evidence." Rule 27.26(f); State v. Mountjoy, Mo.Sup., 420 S.W.2d 316, 323.

■ (11) "In the determination of these fact issues the trial court is necessarily clothed with that discretion exercised by a trial court when acting as the trier of facts, and on appeal the review is limited to a 'determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous.' Rule 27.26 (j)." State v. Mountjoy, Mo.Sup., 420 S.W.2d 316, 323; Crosswhite v. State, Mo. Sup., 426 S.W.2d 67, 70, 71.

■ (12) It is essential that the trial court make adequate findings of fact and conclusions of law. Rule 27.26(i); Gerberding v. State, Mo.Sup., 433 S.W.2d 820, 824.

The transcript of the proceedings on November 4, 1965, shows the following:

"THE COURT: This is case Number 11419, State of Missouri versus Mack Lewis Drew. Let the record show that the Prosecutor, George Baldridge is present and the defendant—you are Mack Lewis Drew?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: The defendant is present and the firm of Frieze and Crandall—you represent him?

"MR. CRANDALL: That's correct, yes, sir.

"THE COURT: They are your attorneys, aren't they, Mr. Drew?

"THE DEFENDANT: Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

"THE COURT: All right. Do you want the information read?

"MR. CRANDALL: No sir, I think—

"MR. BALDRIDGE: Your Honor, at this time the State requests leave to file an amended information and make the charge second degree murder and let the record show—.

"THE COURT: Do you want to amend this information?

"MR. BALDRIDGE: We can file this information, Your Honor, if that is satisfactory, to second degree, to save filing the amendment.

"THE COURT: I show 'By leave of Court, State amends information to charge second degree murder.'

"MR. CRANDALL: Yes, Your Honor, as to that charge we will waive formal arraignment and enter a plea of guilty.

"THE COURT: Mr. Drew, you understand fully—

"THE DEFENDANT: Yes, sir.

"THE COURT:—what you are doing in this case and you have discussed it fully with your attorneys?

"THE DEFENDANT: I have, Your Honor.

"THE COURT: And as I understand, this is not your first experience in Court. You are familiar with the procedure in Court, aren't you?

"THE DEFENDANT: I am, Your Honor.

"THE COURT: And you know absolutely what you're doing?

"THE DEFENDANT: Yes.

"MR. CRANDALL: Your Honor, I want to say this for the record, that I have spent a great deal of time, both Senator Frieze and myself, primarily I have done so, time with this young man and with his parents and have advised with them and counseled with them at long length concerning the move that should be made in this case, and it's with all that background of discussion that we have entered this plea.

"THE COURT: Defendant waives formal arraignment and enters plea of guilty to murder in the second degree. Do you want to make a statement, Mr. Baldridge?"

The prosecuting attorney advised the court as to the facts of the case and recommended a sentence of twelve years. Mr. Crandall then made a statement to the Court and requested the Court to accept the recommendation of the prosecuting attorney. The Court then ordered defendant "committed to the custody of the Director of the Department of Corrections at Jefferson City for a term of twelve years."

The transcript of the proceedings in the trial court on November 4, 1965, does not fully demonstrate a substantial compliance with Rule 25.04. Therefore, we must examine the transcript of the evidence adduced at the evidentiary hearing held June 18, 1968, on the Motion to Vacate Judgment. State v. Sayre, supra; State v. Mountjoy, supra.

Defendant testified at the hearing on June 18, 1968, that he was sentenced November 4, 1965; that he was represented by Mr. Vernie Crandall, who was hired to defend him; that he discussed the disposition of his case with Mr. Crandall, who encouraged him to plead guilty; that Mr. Crandall advised him that, if he entered a plea of guilty, the prosecuting attorney would reduce the charge from first degree murder to second degree murder; that Mr. Crandall advised him of the extent of punishment the prosecuting attorney would recommend; that Mr. Crandall advised him that the only defense he would have would be self defense; that in order to assert that defense he "would have to take the stand," and that his past record would be brought out in court.

Defendant further testified on direct examination as follows:

"Q. Now, tell the Court what happened when you came into the Courtroom.

"A. I don't remember all that happened. We came in and Mr. Baldridge asked the charge be reduced to Second Degree.

"Q. To Second Degree?

"A. Yes, sir. And, Mr. Crandall waived formal arraignment, or something, and entered a plea of guilty and the Judge asked me if I understood what I—or knew absolutely what I was doing, or words of those effects which I answered, 'Yes.'

"Q. And, what was your answer to that, 'Yes?' A. Yes.

"Q. And, do you remember anything else that was said at the time?

"A. Well, Mr. Baldridge made a statement, a long statement, of what was supposed to have happened and all the possibilities that could happen if this had been carried to a jury trial and such.

"Q. And then, what was the sentence imposed by the Court?

"A. Judge Watson sentenced me to twelve years.

"Q. And, I believe with good time you will be available for discharge, possible discharge, within the next four years approximately, is that correct?

"A. Sometime in 1972, in the middle of 1972 or later.

"Q. Now, do you have anything else that you would like to tell the Court concerning

your entry of a plea of guilty. Were there any false promises made to you?

"A. I was told that I would receive my jail time which I didn't; I was told that I would be released in a year on parole, which I wasn't. I have been there nearly three years. I haven't seen a Parole Board let alone make a parole.

"Q. Who told you these tings? A. Mr. Crandall.

"Q. He told you that you would be released within a year on parole?

"A. He told me, 'When you get your time you go up there and you keep your nose clean and we will have you out of there in a year.'

"Q. And, is there anything else that you feel that was misrepresented to you, caused you to enter a plea of guilty when you would not have done so otherwise?

"A. Only the fact of the past record and the other charges and such."

Defendant testified on cross-examination as follows:

"Q. All right, Mr. Drew, at the time of your entering a plea of guilty to this charge of Second Degree Murder, the Court asked you if you understood what you were doing in this case and that you have discussed it fully with your attorneys and isn't it true that you said, 'I have, Your Honor.' A. Words to that effect, yes.

"Q. And, the Court also stated, 'As I understand, this is not your first experience in Court. You are familiar with the procedure in Court, aren't you?' And, you stated, 'I am, Your Honor.' And the Court then asked you, 'And you know absolutely what you are doing?' And, you answered, 'Yes.' So, you knew that you were entering a guilty plea to Second Degree Murder?

"A. I knew Mr. Crandall had.

"Q. He was your attorney? A. That's right.

"Q. And, hadn't you discussed this with him? You could have spoken up at that time and said no, isn't that true? No one prevented you from talking, did they?

"A. No, nobody twisted my arm or anything, no.

"Q. All right. If you didn't agree with it you could have spoken up at that time, isn't that true?

"A. I could have, I guess, I don't know.

"Q. Well, in other words—

"A. I am not that familiar with court proceedings. Just because I have been in a court two or three times and entered a plea of guilty on my own doesn't make me an attorney or something.

"Q. But, Mr. Crandall had discussed the procedure that was going to happen, the possibilities involved in the case, isn't that true? A. Yes, both ways."

Mr. Vernie Crandall testified at the hearing on June 18, 1968, that defendant entered a plea of guilty of his own free will and accord. He further testified as follows:

"THE WITNESS: I have read the charge and there has been a statement that I would like to clear up if I may be given permission to do so.

"MR. DE SHAZER: All right, sir, go ahead.

"THE COURT: All right.

"THE WITNESS: The statement is that I have made the statement that if this plea of guilty was entered that he would be entitled to make parole within one year. I want to state to the Court and if the Court wishes to see it, to place it into evidence here, a letter of August, 1966 Mr. Drew addressed to me at our office in Carthage in which he stated that it was his understanding from the newspapers and the booklet which he had received that he would be entitled to parole in one year. I did not ever make any suggestions as to that because I was not then, nor am I

now, informed as to the length of time that they must serve before they are subject to parole and then again, in a letter of February 2, 1967, Mr. Drew wrote me and he said, 'Sir, you wanted to know my parole date.' I had no idea when his parole date was or when he would be eligible. 'My parole hearing has been set for November of 1968, for which I am anxiously waiting.' Now, it's true that I told Mr. Drew that if anything—Senator Frieze and I would do anything that we could here in Jasper County to assist him toward a parole. There was a misunderstanding in our correspondence and there was a great deal of correspondence from Mr. Drew and I from the State Penitentiary in which I made it very clear that we did not file applications for parole; we did not appear in Jefferson City, but that if it were necessary to get letters down here or to assist him down here that we would be happy to do so and I have a letter acknowledges [sic] that that is what he expected of us and nothing more.

"CROSS-EXAMINATION BY MR. PERRY:

"Q. I have just one question, Mr. Crandall. Mr. Drew stated also that you made the promise to him that he would receive jail time if he entered a plea of guilty on this case.

"A. There was never any discussion along that line; never. And, I don't believe it was asked at the time of the entry."

 We are of the opinion that there is ample evidentiary basis for a finding that the plea of guilty was "made voluntarily with understanding of the nature of the charge." The finding of the trial court is not clearly erroneous in this regard.

Defendant next alleges in his Motion that he did not waive formal arraignment, that he never pleaded guilty, and that the plea of guilty entered for him by his attorney "was a nullity in law." He alleges on appeal that he was denied allocution.

 The transcripts of the proceedings on November 4, 1965, and June 18, 1968, show that defendant was personally present in court on November 4, 1965, with counsel; that defendant knew, and acquiesced in, what was being done in his case; and that counsel waived formal arraignment and entered a plea of guilty for defendant. In these circumstances, an attorney for a defendant in a criminal case may waive formal arraignment, and may enter a plea of guilty for defendant. See State v. Borchert, 312 Mo. 447, 279 S.W. 72; Brown v. United States, 8 Cir., 182 F.2d 933; and 22 C.J.S. Criminal Law § 422(5), p. 1173. Allocution is not necessary when defendant enters a plea of guilty. State v. Borchert, supra; State v. McClanahan, Mo.Sup., 418 S.W.2d 71.

 Defendant next alleges in his Motion that the defenses available to him were never explained to him. Defendant testified on June 18, 1968, that his attorney discussed "the possibilities involved in the case," and that "Mr. Crandall told me that the only defense I had would be self defense." Defendant's contention is not sustained by the record.

 Defendant next alleges in his Motion that he was not advised that he had a right to trial by jury on the charge of murder in the second degree. This contention is without merit. Defendant testified on June 18, 1968, as follows:

"Q. But, you knew that you had a right to a trial by jury?

"A. Well, I thought I did have, yes."

 Defendant next alleges in his Motion that the statement made by the prosecuting attorney on November 4, 1965, as to the facts of the case, represented hearsay testimony and was not binding on him. This statement was made to the Court so that the Court would be advised as to the facts and circumstances of the case before sentence. The Court accepted the recommendation of the prosecuting attorney and

entered a sentence of imprisonment for twelve years. This was the punishment agreed upon and defendant suffered no prejudice in this regard.

Defendant finally contends on appeal that the findings of the trial court on the Motion to Vacate Judgment are inadequate. Rule 27.26(i). We do not agree. "While it would have been desirable that the findings and conclusions of the trial court be somewhat more detailed, they do dispose of the issues raised and are supported by the evidence introduced. They are not clearly erroneous." Crosswhite v. State, Mo.Sup., 426 S.W.2d 67, 72.

The judgment is affirmed.

All of the Judges concur.