Donald Joe **TUCKER**, Movant-Appellant,

v.

**STATE of Missouri, Respondent.**

No. 57005.

Supreme Court of Missouri,
Division No. 2.

June 12, 1972.

Donald W. Jones, Springfield, Court Appointed Attorney for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

HENRY I. EAGER, Special Commissioner.

This is an appeal from an order overruling a motion filed under Rule 27.26 V.A.M.R., to vacate a criminal conviction. Defendant was found guilty on October 11, 1967, of stealing over $50, and a sentence of five years was imposed. The evidence in the original trial was that he threatened the night engineer at a Springfield packing company with a pistol, locked him in a truck and, apparently with an accomplice, looted the safe of approximately $700. Defendant was represented at the trial by Mr. William Moon whom he had employed some two or three weeks before trial, after previously having court-appointed counsel. Upon appeal from the conviction, the judgment was affirmed. State v. Tucker, Mo., 451 S.W.2d 91. The Court there considered in detail the principal question raised in the motion for new trial, namely, the sufficiency of the evidence of identity, but held further that it could not consider matters raised in two amended motions for new trial filed out of time.

In the present motion defendant alleges many things. We shall confine ourselves to the ones which are carried forward in his brief on this appeal. They are (1) that the information was insufficient; (2) that defendant did not receive a fair trial because the Court failed to give an instruction defining the word "property"; (3) that defendant was denied effective assistance of counsel. The latter was very sketchily alleged, but was supplemented by oral amendment at the hearing to such an extent that we consider it to assert: that counsel did not raise, in his timely filed motion for a new trial, "legitimate available issues," and that representation was inadequate in counsel's preparation for trial, particularly in failing to produce a material alibi witness. These things are claimed to have violated substantially all conceivable constitutional provisions. Defendant has obviously had a total of six or seven attorneys in these proceedings, all being appointed except Mr. Moon.

The devious after-trial history of this matter is pointed out in considerable detail at 451 S.W.2d loc. cit. 92. Defendant's trial counsel filed a motion for new trial within a properly extended time. Later, and after the expiration of the proper time, defendant objected that this motion was insufficient, counsel was permitted to withdraw, further time was granted on two or three occasions, and amended, supplemental, and second amended motions were filed, both pro se and by new counsel. These, in the aggregate, raised many things, as indicated in our prior opinion. We are not concerned with the allegations of those motions here. We note, however, that on the hearing of the motions evidence was taken which has, by agreement, been incorporated into our record on the present motion. In our prior opinion the Court said that defendant was not precluded from seeking post-conviction relief; obviously, that could only be permitted upon such grounds as would come within the purview of Rule 27.26, and render the judgment subject to collateral attack.

The Court appointed new counsel for defendant for the hearing on this 27.26 motion. Upon appointment such counsel prepared and furnished the Court with a brief. Defendant was present and participated but did not testify. Certain contentions previously made were waived. The hearing on the motion was unusual in that it consisted merely of argument, agreements, admissions, and the agreed incorporation into the record of the hearing of the evidence above referred to. No witnesses were heard orally. Suffice it to say that defendant was proffered full opportunity to testify and to put on any witnesses whom he chose. He chose to go no further.

In fact, it was at the State's insistence that the prior record was incorporated. It was stipulated (with defendant's personal consent) that Mr. Moon had considered the additional grounds which defendant now insists should have been included in the motion for a new trial, and that he was "apparently" of the opinion that they were "without merit." For some reason, whenever the State's attorney suggested calling Mr. Moon in person, defendant and his attorney discouraged it.

We consider briefly the evidence heard on the several motions for new trial, which is now a part of this record, and which, in fact, was in the nature of a hearing on a 27.26 motion. This evidence was heard over the objection of the State as being outside the scope of any timely motion for new trial. We consider it as a substitute for the evidence which could (and except for defendant's insistence) should have been heard on the present motion. We confine our discussion to those matters now briefed and in controversy.

Defendant testified that he asked Mr. Moon to subpoena as alibi witnesses Howard Kyger and Elvira Layton, who was also referred to under two other names and who was apparently living in Kyger's apartment, and that he wanted his mother and brother notified; that no subpoena was issued except one for Elvira on the morning of trial; that she did not appear; that his brother was notified but his mother was not. The brother did not appear but the mother did appear and testified. (The brother's testimony would have been substantially the same as that of the mother.) Defendant had never given any statement to the authorities; he further testified: that Kyger appeared and testified at his trial; that he gave Mr. Moon Elvira's address, and Moon said a subpoena had been issued; that at the beginning of trial Mr. Moon said "he hadn't been able to reach" her; that he had already asked Moon to get a continuance; that he talked to his mother during the noon hour, but did not then request any further effort

to get the brother who was only 55 miles away and could be reached by phone.

William Moon, who had practiced law since 1936, testified: that he was employed in the case rather late, after the preliminary hearing, and perhaps two or three weeks before trial; that he talked with defendant in the jail, and defendant requested that he get Howard Kyger and his "wife" Elvira as witnesses, giving an address where he "thought" Mrs. Kyger might be staying; that Kyger was in jail and he talked with him; that he went out to the address given for Mrs. Kyger three or four times, found no one at home, and talked to a neighbor who seemed to know nothing about her; he went to the address twice on one evening and also on two other days; that he learned from Kyger that Elvira's testimony would not be what defendant thought it would be, and that it would not agree with what Kyger would testify to, in that she would say that defendant accompanied them on an all-day trip to look at a farm on Sunday, the day of the crime. (We note that Kyger testified that defendant did not go with them, whereas at the hearing on the motions Elvira testified that he did.) After learning this, Mr. Moon "more or less abandoned efforts" to produce her, but did, at defendant's insistence, have a subpoena issued for her on the morning of trial. Mr. Moon further testified: that he talked to defendant's brother twice before the trial, told him of the date, reached his mother "through him to be here," but that the brother said he was too busy and that nothing he could say would help, and that he wouldn't make the trip. The testimony of the mother was merely to the effect that she and the brother saw defendant up to about midnight on the night in question, approximately three hours before the crime was committed. Mr. Moon also testified that he thought that they were as ready for trial as they could possibly be, and that he tried the case as hard as any case he had ever tried; that he had notified defendant that he could not locate Elvira, and that a subponea would do no good

**14**

until they could locate her; he did not consult with defendant concerning the grounds for the motion for new trial; he did furnish defendant a copy.

Elvira Estes, also known as "Layton", was permitted to testify at the hearing, over the objection that an alibi could not then be established; she was allowed to testify essentially as an offer of proof, presumably as to what she would have testified to at the trial. In substance, that was that she and Kyger had come back to their apartment at about midnight on the night in question; that defendant, who had been staying there and sleeping on the couch, was there, and also his mother and brother, who soon left; that the three talked until about 1:00 a. m., when all three went to bed; that when she got up the next morning around 6:30 defendant was asleep on the couch; that all three left about 7:00 a. m. and were gone all day to look at a farm. She further testified: that she was living at the address given to Mr. Moon at the time of trial, although she had lived at several other places since; that she read of the charges against defendant but contacted no law enforcement officers, and that she would have been willing to appear.

As already indicated, this prior evidence was made a part of the present record. The trial court found and ruled on the present motion: (1) that the information was not defective; (2) that there was no error in not further defining "property"; and (3) that defendant's employed counsel filed a timely motion for new trial as to "all matters counsel felt proper" and that the Constitution does not protect a defendant against all mistakes of counsel; that the record of the trial and the testimony does not support the claim of ineffectiveness of counsel, either concerning the motion for new trial or the calling of witnesses. The motion was overruled.

█ There is no merit in the objections to the amended information. They are: that it is vague and insufficient in

that it fails to allege that the property was taken from a "person", fails to allege "ownership", and fails to state "where" the alleged offense occurred. Many cases are cited in defendant's pro se motion and some in the present brief. None are in point here. A corporation is always considered to be a person under Missouri law. The amended information alleged, in part, that defendant " * * * * did then and there wilfully, unlawfully, feloniously and intentionally steal, take and carry away certain valuable property, to-wit: good and lawful money of the United States of America, said property being of the value of more than Fifty and no/100 ($50.00) Dollars, the property of Welsh Packing Company, Incorporated, a corporation, * * *." There was a sufficient allegation that the property was taken from a "person." It was alleged that the money was "the property of Welsh Packing Company, Incorporated, a corporation," and that it was taken "without the consent of the said owner." Ownership could hardly have been alleged more definitely. The place of the crime was alleged as "in the County of Greene and State of Missouri." Such has always been held sufficient. It would be a waste of time to discuss the cases cited. The amended information sufficiently informed defendant of the date and place of the offense and the nature of the charge. The trial court so found. These objections are really frivolous, but it is obvious from viewing the pro se motion that they originated with the defendant himself, and counsel is not to be blamed.

█ It is also contended that the Court erred in that it did not define the word "property" as used in Instruction No. One. Matters of instructions, if error at all, are trial errors and are not to be raised collaterally, certainly not unless the error is so glaring as to make the trial unfair. State v. Smith, Mo., 411 S.W.2d 208; this was not such. A motion under Rule 27.26 is not a second appeal or a substitute for a motion for a new trial. State

v. Hooper, Mo., 399 S.W.2d 115; State v. Schaffer, Mo., 383 S.W.2d 698; Franklin v. State, Mo., 455 S.W.2d 479. However, it is simpler here to hold, as we now do, that there was no error whatever; the word "property" as used, was fully defined in the instruction as: "to-wit: good and lawful money of the United States of America * * *;" This was entirely adequate. No other property was in issue, defendant was only charged with stealing money, and there could hardly be a more specific definition of a type of "property." The trial court so found.

The remaining contention is that defendant's employed counsel was ineffective: (1) with reference to the omission of reasons in the motion for new trial, and (2) in his preparation for trial and the failure to call "material alibi witness." (Brief p. 7.) The trial court found: that defendant's employed counsel had filed a timely motion for new trial "as to all matters counsel felt proper"; that the record and the 27.26 testimony did not support a claim of ineffectiveness of counsel in that regard; that Mr. Moon's judgment in not calling the alibi witness (Elvira Estes-Layton-Kyger) "can be well understood by this court," since her testimony was in conflict with a witness who did testify; and finally, that as a matter of fact counsel was not ineffective and that the movant "was ably represented by counsel."

With reference to the alleged ineffectiveness of counsel in failing to include other reasons in his motion for new trial, we shall consider only those supposed reasons which defendant, through counsel, has now preserved in his brief. All else is waived. We have already discussed and denied two of these.

Mr. Moon's motion for a new trial alleged in much detail the insufficiency of the evidence, relying chiefly upon inadequate identification. He also included two other points in very general terms. The question of identification was the principal issue at the trial and Mr. Moon cross-examined the state's principal witness at great length. On appeal this Court considered and ruled the sufficiency of the evidence on identification. A defendant is, of course, entitled to counsel and to effective counsel. But counsel is not to be adjudged ineffective because of some error or mistake in trial strategy or judgment nor because some action of counsel proved unsuccessful. State v. Wilkinson, Mo., 423 S.W.2d 693; Gaitan v. State, Mo., 464 S.W.2d 33; State v. Cook, Mo., 440 S.W. 2d 461; State v. Worley, Mo., 371 S.W.2d 221; State v. Brown, Mo., 461 S.W.2d 743; United States v. Meyer, CA 8, 417 F.2d 1020. And the burden is always upon the movant to prove his allegations. State v. Brown, Mo., 449 S.W.2d 664; Hamby v. State, Mo., 454 S.W.2d 894. The record in this case, the stipulation that Mr. Moon considered the other reasons now asserted and considered them to be without merit, together with Mr. Moon's own testimony, which was considered by the trial court, bring this case within the principles just stated. The finding of the trial court that the charge of ineffectiveness of counsel regarding the motion for new trial was not supported by the record and testimony is not "clearly erroneous," Crosswhite v. State, Mo., 426 S.W.2d 67, and the contention is denied.

The other charge of supposed ineffectiveness was based upon the failure to produce Elvira Estes-Layton-Kyger as an alibi witness, and perhaps on the failure to produce defendant's brother. As to the latter, Mr. Moon testified that he notified him twice of the trial time, and that the brother said that he could not be of any help and declined to come. Defendant had previously advised Mr. Moon that only notice would be necessary. The brother's testimony would have been substantially the same as that of defendant's mother, who did testify, and neither could have proven an effective alibi. Certainly no ineffectiveness or substantial prejudice was shown under these circumstances as to the brother. As to Elvira, defendant says that he requested she be subpoenaed; he takes

the position that, as a matter of law, her nonproduction shows ineffectiveness of counsel. This is simply not true. According to Mr. Moon, he went out to the address given to him three or four times on three different days and was unable to find her; he also talked to a neighbor who seemed to know nothing of her; also, in talking to Mr. Kyger, at whose apartment she was living, he found that there would be a material difference between her testimony and Kyger's, as already related. Neither could actually testify where defendant was at 3:00 a. m., since they went to bed and to sleep about 1:00 a. m. and did not see defendant again until 6:30 or 7:00 that morning. Defendant also made some contention that this witness could to some extent have impeached the testimony of a woman who testified that she heard defendant say that he had locked a man and some boys in a truck. At defendant's insistence a subpoena was issued for Elvira on the morning of trial, but Mr. Moon told defendant that it would do no good until she could be located. Mr. Moon testified also: that he had explained to defendant some days before the trial that he could not locate this woman; and that in view of the discrepancy which had developed between her expected testimony and that of Mr. Kyger he had more or less abandoned the idea of using her as a witness. The trial court found, in effect, that there was no ineffectiveness in this respect where, in counsel's judgment as an experienced attorney, he had decided not to use the witness because of the expected conflict.

Defendant has not sustained his burden of proving inadequacy or ineffectiveness of counsel in either respect. State v. Brown, Mo., 449 S.W.2d 664; Hamby v. State, Mo., 454 S.W.2d 894. And the finding of the trial court thereon was certainly not clearly erroneous. Crosswhite v. State, Mo., 426 S.W.2d 67. For more specific discussions of the claim of ineffectiveness in failing to produce certain witnesses and properly prepare for trial, see also: State v. Warren, Mo., 451 S.W. 2d 30; Meller v. State, Mo., 435 S.W.2d 637; State v. Wilkinson, Mo., 423 S.W.2d 693. The facts and the law here do not support defendant's contention.

■ Counsel has argued, more or less incidentally, that defendant was unconstitutionally deprived of counsel for the first 30 days after his arrest. He had appointed counsel at his preliminary hearing and thereafter. The record shows no substantial prejudice from this omission (State v. Deckard, Mo., 459 S.W.2d 342) if it be true, unless we resort to pure speculation. The contention is of no validity.

The cases cited by defendant involve, generally, situations where the trial courts have, upon their own findings and conclusions, vacated judgments and sentences for various reasons, including ineffectiveness of counsel. The facts of our case do not fit those opinions and it is unnecessary to discuss them. The cases are generally: Johnson v. State, Mo., 458 S.W.2d 713; Holbert v. State, Mo., 439 S.W.2d 507; Jones v. State, Mo., 445 S.W.2d 311; State v. Frey, Mo., 441 S.W.2d 11; Green v. State, Mo., 451 S.W.2d 82; Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340; Application of Tomich, D.C.Mont., 221 F.Supp. 500. The trial court in our case has made findings adverse to such a result and we do not try the matter de novo in this Court. As we have already indicated, the ruling here is not "clearly erroneous."

It was stated at the hearing on this motion that defendant then (April 29, 1971) had only ten or eleven months left to serve on his sentence. It seems obvious that he had been released by the time this case was submitted here, and we have had some hesitancy in considering it on the merits because of mootness. State v. Brookshire, Mo., 377 S.W.2d 291. However, since our record does not actually show defendant's present status, and since our more recent cases seem to have relaxed the rule some-

what, State v. Carter, Mo., 399 S.W.2d 74, State v. Garner, Mo., 432 S.W.2d 259, we have ruled on the merits.

The order of the trial court is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY and DON-NELLY, JJ., and PETERS, Special Judge, concur.